## Lafferty v. Estep

354

*Donn L. Guthrie,* for plaintiff.
*Michael D. Power,* for defendant.

BURR, *S.J.,* May 19, 2011—The defendant/petitioner, Ralph V. Estep (hereinafter, "defendant"), has appealed from this court's order, following a hearing, denying his petition to open the judgment confessed against him by the plaintiff/respondent, David T. Lafferty (hereinafter, "plaintiff"), subsequent to the defendant's default on payments due on a mortgage balloon note issued by the plaintiff as consideration for the defendant's purchase of plaintiff's real property situated at 42 Woodland Drive in Chadds Ford Township, Pennsylvania (hereinafter

"premises").[1]

The plaintiff's complaint for confession of judgment sets forth the following allegations against the defendant: (1) that, on or about January 3, 2007, the defendant executed and delivered to the plaintiff a balloon note in the original principal sum of $1,300,000.00 evidencing his indebtedness to the plaintiff and that the defendant failed to pay all of the monthly installments due and owing on that indebtedness to the plaintiff; (*Id.*, ¶¶ 3-5; a copy of the balloon note is appended as "Exhibit A" to the plaintiff's complaint for confession of judgment);[2] (2) that by virtue of defendant's default, and by the terms of the balloon note, the entirety of its principal became due, payable and collectible in full without notice to the defendant. (*Id.*, ¶ 6); (3) that the defendant was sent notice of default and acceleration on or about August 20, 2010, as well as the plaintiff's demand for payment in full of the entire unpaid balance, principal, interest and other sums due and owing under the balloon note; (*Id.*, ¶¶ 7-9)(a copy of the default

---

1. The plaintiff's complaint for confession of judgment was filed, and damages in the amount of $1,177,751.05 were assessed against the defendant on September 2, 2010. The petition to open the judgment was filed with the court on October 1, 2010. The hearing on the petition to open judgment took place on January 31, 2011 and the order now appealed from was issued on February 16, 2011. Plaintiff has expressed no objection to the timeliness of defendant's prayer for relief. It is here noted that the within petition was assigned for disposition by this court as a miscellaneous matter.

2. The terms of the balloon note executed by the parties on January 3, 2007, required the Defendant to make 360 monthly payments of $8,648.93 over a thirty-year amortization period, as well as two payments in the amount of $100,000.00 on May 1, 2007 and September 1, 2007. The Defendant made the latter two payments and ceased meeting his monthly loan payment obligations to the Plaintiff in the calendar year 2010. (Petition to Open Judgment, ¶¶ 4-5, 28; a copy of the Balloon Note is appended as "Exhibit A" thereto).

356

notice sent to the defendant is appended as "Exhibit B" to the plaintiff's complaint for confession of judgment); and (4) that the defendant has failed to remit the foregoing payment in this non-consumer credit transaction upon notice and demand upon him to do so, and the plaintiff has confessed judgment as authorized under paragraph 7 of the balloon note pursuant to a warrant of attorney that is less than twenty years old. (*Id.*, ¶¶ 10-13).

Paragraph 7 of the subject balloon note states that the defendant granted Warrants of Attorney for the confession of judgment upon default and that he "knowingly, intentionally, voluntarily, and unconditionally waive(s) any and all rights [he] may have to prior notice and opportunity for hearing under the respective Constitutions and laws of the Commonwealth of Pennsylvania and the United States of America." (*Id.*, Exhibit A to the complaint for confession of judgment, p. 3). The confession of judgment clause which follows this statement and which was initialed by the defendant is set forth in its entirety below:

> "Upon the occurrence of an event of default, maker, without further consent or notice, does hereby irrevocably and unconditionally authorize and empower any attorney o[r] the prothonotary of any court of record of the commonwealth of Pennsylvania or elsewhere to appear for maker in any such court, and with or without a complaint or declaration filed, in an appropriate action brought against maker on this note, to enter and confess judgment against maker in favor of payee or its successors and assigns, for all or

any portion of the entire amount due to payee upon such event of default as provided herein, together with costs of suit and attorneys' commission in an amount equal to ten (10%) percent of the principal amount outstanding under this note, but in no event less than five thousand dollars ($5,000.00); and for so doing this note or a copy hereof verified by affidavit shall be a sufficient warrant. The authority herein granted to appear, enter and confess judgment shall not be exhausted by any one or more exercise thereof or by any defective exercise thereof, but shall continue and be exercisable from time to time until the full payment of all amounts due from maker to payee hereunder and under the loan documents is made. The foregoing right and remedy is in addition to and not in lieu of any other right or remedy available to payee under this note or otherwise.

Maker acknowledges having had the assistance of legal counsel or the opportunity to retain legal counsel in the review and execution of this note for the purpose of explaining the meaning and effect of the foregoing provisions concerning confession of judgment...." (Exhibit a to the respondent's complaint for confession of judgment, pp. 3-4).

The defendant contended in response to the complaint for confession of judgment that the plaintiff knew at the time of defendant's purchase of the premises that the latter had intended to use it both as a residence and as a place of business, but that plaintiff had failed to inform him of a township requirement that a sewer hookup was

necessary before any portion of the premises could be used commercially. (Petition to open judgment, ¶¶ 7, 10). The defendant additionally averred that the plaintiff had fraudulently misrepresented to him that the premises were being conveyed free of all liens and encumbrances subject only to the mortgage of the plaintiff and that the wiring of the premises was compliant with all local codes. (*Id.*, ¶¶ 8-9, 11). The defendant asserted that, when he attempted, through Artisans Bank in June of 2008, to restructure his financial obligations including the borrowing of sufficient funds with which to pay off the balloon note, Artisans discovered and reported to the defendant that the premises were encumbered by several preexisting obligations of the plaintiff totaling over $350,000.00. (*Id.*, ¶¶ 17-19, 26; Exhibit B - Title Insurance Report dated June 28, 2010). The defendant asserted that, although he had "immediately" notified the plaintiff of the bank's discovery and that he would be unable to restructure his financial obligations through Artisans Bank unless the plaintiff "immediately" satisfied the existing encumbrances, the plaintiff's refusal or inability to clear the encumbrances rendered defendant's effort to obtain sufficient financing with which to pay off the balloon note futile. (*Id.*, ¶¶ 20-25). The defendant claimed that the inability to refinance the obligation on the balloon note due to the plaintiff's failure to convey clear title prevented him from making the payments thereupon during the calendar year, 2010, which lapse on the part of the defendant led to the filing of the complaint for confession of judgment by the plaintiff. (*Id.*, ¶¶ 28-29).

The defenses raised in six counts pleaded by the defendant in his petition to open judgment are: (I) fraudulent inducement of the sale of the premises with misrepresentations that they were being conveyed free and clear of all liens and that the property was electrical code compliant; (II) fraud with regard to the same misrepresentations alleged in count I; (III) rescission of the sale contract for the premises on grounds of the plaintiff's alleged misrepresentations that he was conveying clear title thereto and that it was electrical code compliant; (IV) breach of the sale contract for the premises on grounds of the plaintiff's alleged misrepresentations that he was conveying clear title thereto and that it was electrical code compliant; (V) setoff of any damages awarded to the defendant from any judgment awarded by the court; (VI) denial or reduction of the 10% attorney fees allowed pursuant to the balloon note for confession of judgment against the defendant. (*Id.*, ¶¶ 30-69). The defendant sought only the opening, and not the striking, of the within judgment, and the defenses of alleged fraudulent misrepresentations by plaintiff regarding electrical code compliance and sewer service requirements for commercial use of the premises were withdrawn at the hearing on the petition to open judgment. (1/31/11 N.T. 87-88). Since the defendant has admittedly never made any payments to reduce or eliminate the one encumbrance shown to remain on this property, he is not entitled to an award of a set-off. (N.T. 100-102). Further, because the defendant has never submitted evidence in support of a boilerplate claim that the attorney fees allowable for confession of judgment to which he had agreed in executing the balloon note were

unreasonable, this contention must be deemed waived.

The plaintiff answered the petition to open judgment with averments that only one encumbrance of the three discovered during Artisan Bank's title search of June 2008 remains on the premises, a $100,000.00 mortgage lien in favor of Mellon (now Citizens) Bank dated December 17, 1998 and recorded on February 24, 1999 in volume 1839, page 1640 in the office of the recorder of deeds of Delaware County, Pennsylvania that plaintiff expects to have removed in the near future. (Answer and new matter to petition to open judgment, ¶¶ 19, 26). According to the plaintiff, a $150,000.00 mortgage lien in favor of Mellon (now Citizens) Bank dated December 17, 1998 and recorded on March 22, 1999 in Volume 1850, Page 794 was removed on or about September 20, 2010. (*Id.* ¶23). The third lien, a $100,000.00 mortgage in favor of Freedom Valley Bank (before its merger with Wilmington Trust Company) dated September 22, 1986 and recorded on November 10, 1986 in Volume 398, Page 2171 was paid in full on or about December 17, 1998 but never marked satisfied and plaintiff contended that his efforts to have that lien removed are continuing through the present time. (*Id.*, 26).

The plaintiff countered the defendant's defenses to the complaint for confession of judgment with contentions that the respondent had waived his rights to perform a title search and to inspect the premises pursuant to paragraphs 14 and 21 of the Agreement of Sale for the premises, and that an integration clause set forth in Paragraph 22 thereof barred all other evidence pertaining to the intentions of

the parties from the time of its execution. (*Id.*, new matter, ¶¶ 73-78, 82). The plaintiff averred that the defendant's allegations of fraud were time barred for not having been sued upon within two years of the discovery of the existence of liens on the premises noted in Artisans Bank's title search report in June of 2008. (*Id.*, ¶91). The plaintiff also asserted that rescission of a contract for the sale of real estate based upon a breach of warranty of clear title is unavailable where the liens can be removed by the purchaser himself or by the seller upon the demand of the purchaser. (*Id.*, ¶¶84-85).

The "agreement for sale of commercial real estate" appended as "Exhibit A" to the plaintiff's answer and new matter to the petition to open judgment, and presented as Exhibit P-1 by the defendant at the hearing, sets forth several provisions that are germane to the issues raised in this appeal. Paragraph 3 (c) thereof states that the respondent/seller of the premises is conveying the property "by fee simple deed of special warranty." (*Id.*, p. 1). Paragraph 14(a) of the agreement sets forth the respondent/Seller's promise to convey the premises "free and clear of all liens [and] encumbrances," and that "title to the subject property shall be good and marketable and such as will be insurable by a reputable title insurance company at the regular rates. Buyer shall pay all title charges and fees as are customary including any cancellation charges, recording fees or endorsement fees." (*Id.*, p. 4). Two additional provisions of paragraph 14 of the agreement that govern the subject of "Title" to the premises are recapitulated in their entirety below:

362

"(b) In the event Seller is unable to give good and marketable title and such as will be insurable by a reputable title insurance company at the regular rates, as specified in paragraph 14 (a), Buyer will have the option of taking such title as Seller can give without changing the price, or of being repaid all monies paid by Buyer to Seller on account of purchase price, and Seller will reimburse Buyer for any costs incurred by Buyer for those items specified in item 14 (c) [i.e. surveys required for determining an adequate legal description of the property] and in the later event there will be no further liability or obligation on either of the parties and this agreement will become VOID.

\*\*\*\*\*

(d) Buyer will supply Seller with a title commitment from a reputable title insurance company within ten (10) days of the effective date of this agreement and advise seller of what title objections are requested to be removed. Seller shall then review the title objections and promptly advise buyer of any title objections that cannot be removed or that they are within the agreed condition of the title specified in paragraph (a). Buyer shall have ten (10) days from the date of Seller's notice of objections that cannot be removed to elect in writing to terminate this agreement. All title objects not to be removed by seller shall remain at time of closing and shall be the 'permitted title objections'. This provision shall not modify Seller's obligation to deliver title at time of

settlement free of all monetary liens." (*Id.*, p. 5)

Paragraph 21 of the Agreement of Sale governing "Representations" states that "it is understood that buyer has inspected the property, or hereby waives the right to do so, and that "[i]t is further understood that this agreement contains the whole agreement between the seller and the buyer and there are no other terms, obligations, covenants, representations, statements, or conditions, oral or otherwise, of any kind whatsoever concerning this sale." (*Id.*, p. 6). Paragraph 22 of the sale Agreement continues in that light, providing that: "[t]his Agreement sets forth the entire agreement of the parties and no oral modification of or addition to this agreement exists; furthermore, no amendment of this agreement can be made except by writing signed by both buyer and seller...." (*Id.*). A "Legal Notices" provision appended to the agreement of Sale and initialed by the defendant sets forth the proviso that "buyer and seller acknowledge that agent has advised them to consult and obtain experts concerning the legal and tax effects of this agreement and completion of the sale, as well as the condition and/or legality of the property, including but not limited to, the property's improvements, equipment, soil, tenancies, title and environmental aspects. (*Id.*, p. 8, ¶ 3).

The defendant gave sworn hearing testimony that, as of December 17, 2007, Artisans Bank professed interest in extending him a loan in the amount of $3.8 million using his parcels of real property, including the premises, as collateral, and that a loan in that amount was approved on July 9, 2008. (N.T. 52-58; Hearing Exhibits P-9, Exhibit

A thereto, and P-12). A condition of the loan which would have allowed for the defendant to clear the extant balance remaining on the mortgage for the premises was that the properties collateralizing the loan be capable of being conveyed to Artisans with clear title. (N.T. 58-59). The defendant stated that it was "not long after" he received notice of the approval of the loan on July 9, 2008, that he became aware of an "issue regarding recorded liens" on the premises by way of a July 28, 2008 "commitment for title Insurance Form" report on Artisans title search of the properties intended to collateralize the loan. (N.T. 59-60; hearing exhibit P-14). It was on pages six and seven of that document that four encumbrances, including the extant balloon note, were listed as clouding the title to the premises. (N.T. 59-62). The defendant related that, after he became aware of the remnant liens on the premises, he called the plaintiff's attorney, who had handled the settlement, and then contacted the plaintiff directly. (N.T. 63-64). The defendant testified that he had bought and sold a number of parcels of real property through the years and had constantly (i.e., "nine out of ten times") run into the problem of remnant encumbrances, or liens not yet marked as satisfied, existing on properties he was buying or selling. (N.T. 65-66).

The defendant presented as hearing exhibit P-17 a copy of an e-mail sent to him by his attorney on September 4, 2008 informing him that the attorney was suggesting to the banks involved in the defendant's financial restructuring effort that a $900,000.00 escrow account be established for covering the outstanding balance on the balloon note

and that defendant should plant a bug in the plaintiff's ear to urge him to get the outstanding liens on the premises quickly satisfied to prevent the need for it. (N.T. 68-70; Hearing Exhibit P-17). The defendant replied that he had faxed the plaintiff just such encouragement on September 8, 2008 in which he informed the plaintiff: "you still have a problem with liens on the property and my atty. wants to escrow $900,000 until the problem is fixed", but had never raised the matter with him afterward in written correspondence. (N.T. 95-98; Hearing Exhibit P-18). The defendant presented as hearing exhibit P-19 a copy of a faxed transmission from Artisans Bank dated October 10, 2008 approving a loan in the amount of $2,850,000.00 instead of the originally approved amount of $3.8 million which had included the funding necessary to pay off the subject balloon note. (N.T. 75-78, 81-82; Hearing Exhibits P-21 through P-23). The defendant asserted that this was the first time he had become aware that there was a "bona fide" lien, as opposed to a "remnant lien" on the premises. (N.T. 78). When asked why he had not asked the plaintiff previously why he had informed the defendant that there were no actual liens on the premises, the defendant replied that "during the tenure of my ownership unfortunately everything he told me was untrue...it was pointless to ask him for another lie." (N.T. 80).

The defendant testified that the parties then attempted to lengthen the period of repayment of the mortgage note until 2013 by means of an addendum to the original balloon note because artisans bank had refused to lend him the money with which to do so immediately because

of the liens encumbering the property, an allegation that bore absolutely no mention in the addendum to the balloon note according to defendant's hearing testimony. (N.T. 80-81, 92-94; hearing exhibits P-2c and P-20). The defendant related that he did not attempt to pay off the encumbrancing liens, but continued to make payments on the balloon note and to reside in the premises until April of 2010, at which point, he simply "gave it back" to the plaintiff. (N.T. 83, 100-102).

On cross-examination, the defendant stated that he had not ordered a title insurance policy, despite the opportunity to do so being suggested in Paragraph 14 of the agreement of sale. (N.T. 88-89). When asked why he had not done so, the defendant's attorney replied that it was because of the plaintiff's representations that he was conveying clear title. (N.T. 110). There then ensued a series of remarks among counsel for the parties and the court wherein defendant's attorney acknowledged that it was "stupidity" for his client not to obtain title insurance when purchasing the premises, but that he had presented a factual issue for a jury to decide as to when the defendant should reasonably have known of "a bona fide problem" with the premises' title in order for his fraud claim to have been timely filed, and that any inferences supporting timeliness must, perforce, be resolved in favor of the defendant. (N.T. 110-118).

The defendant offered the suggestion in redirect testimony that he had not obtained title insurance at the time of purchasing the premises in order to save the costs of hiring an attorney to handle the settlement and because

he relied upon the plaintiff's assurances that he was passing clear title. (N.T. 122-124). The plaintiff presented his own testimony that, of the two other encumbrances on passing clear title to the premises, only the Mellon (now Citizens) Bank loan for $100,000.00 remains unpaid. (N.T. 132-133; Hearing Exhibit R-1, Satisfaction Piece dated September 10, 2010 for $150,000.00 mortgage from Mellon (now Citizens) Bank).

Following the parties' submissions of post-hearing memoranda of law, the court issued the order denying the instant petition to open judgment.

The defendant timely appealed from that order and has filed a concise statement of errors and rulings complained of on appeal that is set forth in its entirety below:

"1. The trial court erred in failing to view the evidence in the light most favorable to the [defendant] and accepting as true all evidence and inferences following therefrom;

2. The trial court erred in failing to resolve any doubt as to the adequacy of [defendant's] defense to a confession of judgment in favor of opening the disputed judgment;

3. The trial court erred in finding that [defendant] failed to produce evidence which, in a jury trial, would require the issues to be submitted to a jury;

4. The trial court erred in finding that [defendant] failed to produce evidence which, in a jury trial, would

require submittal to a jury regarding [defendant's] allegations against the plaintiff regarding fraud;

5.   The trial court erred in finding that [defendant] failed to produce evidence which, in a jury trial, would require submittal to a jury regarding [defendant's] allegations against the plaintiff regarding fraudulent inducement;

6.   The trial court erred in finding that defendant failed to produce evidence which, in a jury trial, would require submittal to a jury regarding [defendant's] allegations that the plaintiff misrepresented, or made material omissions regarding the existence of encumbrances on the subject property;

7.   The trial court erred in finding that [defendant] failed to produce evidence which, in a jury trial, would require submittal to a jury regarding the [defendant's] rescission of contract claims;

8.   The trial court erred in finding that [defendant] failed to produce evidence which, in a jury trial, would require submittal to a jury regarding [defendant's] breach of contract claims against the plaintiff concerning the agreement of sale for the subject property;

9.   The trial court erred in finding that [defendant's] claims were time barred;

10.  The trial court failed to properly apply the discovery rule in light of the facts and evidence produced by [defendant];

11. The trial court erred in failing to apply the fraudulent concealment doctrine in light of the facts and evidence produced by [defendant];

12. The trial court erred in failing to allow a jury to determine whether the elements of the discovery rule and/or the fraudulent concealment doctrine were met; [and]

13. The trial court erred in failing to reduce or modify that portion of the confession by judgment constituting attorney fees and costs. (Defendant's statement of errors and rulings complained of on appeal, pp. 2-3).

The issue of attorney fees, as previously noted, having been waived (defendant's statement of errors and rulings complained of on appeal, paragraph 13), the remaining appellate issues raised by defendant may be fairly summarized as follows: whether the defendant's defenses grounded in allegations of fraud on the part of the plaintiff with regard to the conveyance of clear title to the premises are time-barred (statement of errors and rulings complained of on appeal, paragraphs 1-12).

## The Defendant's Fraud-Based Defenses to Plaintiff's Confession of Judgment Are Time-Barred

The defendant's fraud-based defenses, including allegedly fraudulent misrepresentations and inducements to enter the subject real estate sale agreement being the asserted grounds for his contention of breach of contract and prayer for rescission as a form of relief therefrom as set forth in Paragraphs 1 through 12 of his statement of

errors and rulings complained on appeal, are time-barred. It is clear from the evidence, including the defendant's own hearing testimony, that his discovery of lien encumbrances affecting his ability to secure a mortgage debt using the premises as collateral took place more than two years before the fraud-based defenses to this action were pleaded on October 1, 2010.

The defendant testified that he is a businessman with a significant level of experience in the buying and selling of real property, and that in nine out of ten of his transactions of that nature, he had encountered the problem of remnant, or unsatisfied, liens on the parcels involved. The plaintiff has both consistently pleaded and offered credible testimony that he had forgotten about the three additional encumbrances besides the mortgage on the premises which, at the time of the sale of the premises, were from ten to twenty years old. Moreover, two of these were true "remnant" liens for loan obligations that had been fully remunerated to the lenders but not yet marked as satisfied. A third such lien consisting of a $100,000.00 mortgage on the premises held by Mellon (now Citizens) Bank is still outstanding with assurances from the plaintiff that he is working to retire that obligation in order for it to be marked satisfied as well. Defendant's claim that the plaintiff had lied to him from the time of the parties' entry into the agreement of sale about his ability to pass clear title to the premises is simply not credible because it is inconceivable that the plaintiff would do so while the defendant was attempting to secure a mortgage from Artisans Bank that would have permitted him to pay off

the balloon note and to retire that obligation to the plaintiff as well.

Moreover, the three smaller encumbrances, only one of which was not a remnant lien and was valued at less than ten percent of the balance due on the balloon note, did not eradicate the defendant's ownership or ability to convey title to the premises under the circumstances sub judice, but affected only his ability to use it as collateral for a $3.8 million loan with which he intended to pay off his financial obligations including the balloon note. If the defendant had wished to sell this property or to obtain clear title to it, all he had to do was pay the balance on the mortgage lien or demand that the plaintiff do so and the issue presented here would have been resolved. The fact that the plaintiff was unable to pay off the lien at the relevant time did not prevent the defendant from doing so and claiming the sum from the plaintiff in another cause of action or otherwise.

Furthermore, paragraph 14 of the sale agreement allowed the defendant the opportunity for challenging the clarity of title being conveyed following a title search, as well as the right to rescind the sale agreement if his objections thereto could not be resolved. Instead of doing the title search and acquiring title insurance, the defendant waived the right to raise this challenge and went on to remit payments on the balloon note until approximately April of 2010. Therefore, defendant tacitly accepted the title to the premises that could be conveyed with the only remaining remedy of paying off the lien encumbrances himself and seeking reimbursement from the plaintiff, or making a

demand on the plaintiff to remove the encumbrances himself.

The statute of limitations for bringing a claim sounding in deceit or fraud is two years. 42 Pa.C.S. §5524 ("The following actions and proceedings must be commenced within two years:...(7)...any other action or proceeding.... sounding in trespass, including deceit or fraud...."). (*Id.*). The defendant testified that he had received an e-mail from his attorney on September 4, 2008, admitted into evidence as Hearing Exhibit P-17, advising that it might be necessary to escrow the significant sum of $900,000.00 in order to acquire the $3.8 million loan the defendant had been seeking from Artisans Bank, and that it was imperative for the defendant to encourage the plaintiff to eliminate the liens in order for the defendant to receive the full $3.8 million amount of the loan. The defendant admitted that he had so encouraged the plaintiff via a fax transmission of September 8, 2010. (Hearing Exhibit P-18). More crucial, however, is the defendant's testimony that he became aware of the existence of the encumbrances not long after the issuance of Artisans Bank's title search report from July 28, 2008, but the defendant has never shown exactly when he was informed of the existence of that report. Despite his testimonial vagueness, it is clear that the defendant knew that there were questions raised about his ability to include the premises for collateral on a loan he intended to use to pay off his existing financial obligations. Any threat of that nature signaled by Artisans' reluctance to loan him the full amount he was seeking provided the defendant with sufficient knowledge and

notice of grounds for suing the plaintiff for fraud instead of waiting to raise it as a defense to the judgment confessed against him after an additional two years of making the required payments on the balloon note. It is interesting as well that the defendant then decided sua sponte to give the premises back to the plaintiff long after receiving notice back in July of 2008 that Artisans Bank was backing away from its original commitment to lend him the money to pay that note off completely, and after entering into a Balloon Note Addendum in November of 2008 that would have allowed the defendant to extend payments thereupon through the year 2013. (Hearing Exhibit P-12). For the foregoing reasons, the defendant's assertion that he needed to be certain that the subject encumbrances were "bona fide" as opposed to "remnant" before he was able to file allegations of fraud against the plaintiff is wholly without merit.

In addition, it strains credulity for the defendant to expect the court to believe that an admitted and experienced buyer and seller of numerous parcels of real estate would willingly forego a title search and the purchase of title insurance in order to unearth and remedy the encumbrances which resulted in a reduced loan to him from Artisans' Bank. Had the defendant availed himself of those options at the time of sale, he could have avoided the trouble encountered in negotiating the loan for $3.8 million instead of having to settle for significantly less.

"As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances

upon which a potential right of recovery is based and to institute suit within the prescribed statutory period (citations omitted). Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations (citations omitted); even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on mere lapse of time. Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute.

"The 'discovery rule' is such an exception, and arises from the inability of the injured, despite the exercise of the due diligence, to know of the injury or its cause. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.* 503 Pa. 80, 84, 468 A.2d 471 (1983)(emphasis in original).

The failure of the defendant, a sophisticated buyer and seller of real property, to timely pursue a legal remedy against the plaintiff defies all logic. His own testimony and documentation admitted into evidence clearly established that this is not a "discovery rule" case because defendant knew of the existence of prior liens before September 4, 2008 (Hearing Exhibit P-17), yet he delayed for more than two years before asserting any claims and defenses with respect to these liens when he filed on October 1, 2010 his

petition to open the judgment confessed against him. Here, the defendant, having the ability to ascertain the cause of action and to institute the suit within the applicable period of limitations, and having failed to do so, the statute bars his claim.

## Conclusion

In order to prevail on his petition to open judgment, the defendant was required to respond promptly to the judgment confessed against him, about which no issue has been raised here below, to allege a meritorious defense, and to present sufficient evidence that would allow its submission to a jury. *Lambakis v. Exar*, 340 Pa. Super. 483, 490 A.2d 882 (1985). The evidence produced must be clear, direct, precise and credible. *Germantown Savings Bank v. Talacki*, 441 Pa. Super. 513, 657 A.2d 1285 (1995). It has been shown that the defendant failed to meet his burden of raising a defense that was not time-barred, although none of the defendant's defenses can be said to be meritorious from the evidence presented. Moreover, the defendant presented no evidence whatsoever to establish that the plaintiff's claim for the attorney fees and costs permitted by the confession of judgment clause approved by the defendant were unreasonable.

For all of the foregoing reasons, the defendant has failed to meet his burden of proving a timely, credible and meritorious defense to the judgment confessed against him that could be deemed presentable to a jury, and this determination must not be disturbed on appeal.